Edward R. Wuerttemberger, Appellant, v. Continental Casualty Company, an Illinois Corporation, Appellee.

## Gen. No. 48,366.

First District, Second Division.
October 24, 1961.

George C. Rabens, of Chicago, for appellant.

Taylor, Miller, Busch & Magner, of Chicago (Robert M. Bailey, of counsel), for appellee.

MR. PRESIDING JUSTICE FRIEND delivered the opinion of the court:

Plaintiff sued for reimbursement of hospitalization expenses in the amount of $2522.73, claimed to be due under a policy of insurance issued by defendant. In Count I of his complaint plaintiff alleged that on March 29, 1959 he was admitted to a hospital, where he remained until May 7, 1959, and that on May 13, 1959 he was readmitted and remained until July 3, 1959. The policy provided reimbursement for hospital room and board expenses at the rate of $6 per day for a period of hospital confinement not in excess of thirty days, and at the rate of $3 per day for an additional period of such confinement not in excess of ninety days. During his hospital confinement plaintiff underwent amputation of his leg and removal of his prostate; reimbursement was specifically provided in the policy for both those operations. In all, plaintiff asked reimbursement for hospital expenses as follows:

For hospital room and board—50 days
   @ $6.00 ............................$  300.00
   (relative to leg and prostate ailments)
For hospital room and board—40 days
   @ $3.00 ............................  120.00
For leg surgery........................  35.00
For prostate surgery..................  35.00
For miscellaneous hospital expenses.... 2,570.73

TOTAL .............................$3,060.73

Defendant paid plaintiff a total of $538, as computed below, and says that it thereby fully discharged its total obligation to plaintiff:

| | |
|---|---:|
| For hospital room and board—50 days @ $6.00 | $300.00 |
| (relative to leg and prostate ailments) | |
| For hospital room and board—40 days @ $3.00 | 120.00 |
| For leg surgery | 35.00 |
| For prostate surgery | 35.00 |
| On account of miscellaneous hospital expenses | 48.00 |
| TOTAL | $538.00 |

Plaintiff has instituted this suit to recover $2522.73, representing the difference between $3060.73, which he claims defendant is obligated to pay him under the terms of the policy, and $538, which defendant has already paid to plaintiff and which it asserts satisfies in full its obligation to plaintiff under the terms of the policy.

With reference to hospital indemnity the policy states:

"When by reason of injury or sickness, the Insured shall be necessarily confined within a legally constituted hospital and therein regularly visited and treated by a legally qualified physician or surgeon, the Company will pay the Daily Hospital Indemnity for the period the Insured shall be so confined and treated within six months after the date of the accident or commencement of the sickness, not to exceed thirty days. After the payment of Daily Hospital Indemnity for thirty days as aforesaid, the Company will pay one-half the Daily Hospital Indemnity for the further period the Insured shall be so confined and

treated within said six months, not to exceed ninety additional days.

"The Company will also pay the expense actually incurred by the Insured for X-ray examinations, anaesthetics, laboratory, operating room, dressings, drugs and medicines during the period of such hospital confinement and for ambulance service to and from the hospital, not to exceed in the aggregate four times the Daily Hospital Indemnity as the result of any one accident or sickness."

On trial the defendant insurance company moved to strike Count I on the ground that under the terms of the policy the insurer had discharged its obligation with respect to "miscellaneous hospital expenses" by the payment of $48 on those items. The court sustained defendant's position and granted its motion to strike Count I. Count II of the complaint was thereafter withdrawn, and there being no issue remaining for determination, the court entered judgment in favor of defendant, from which plaintiff appeals.

Plaintiff and defendant urge different interpretations of the hospital indemnity coverage. Resolution of the controversy depends upon the application of the qualifying clause "not to exceed in the aggregate four times the Daily Hospital Indemnity as the result of any one accident or sickness." Plaintiff contends that defendant agreed to pay and is therefore liable for all "the expense actually incurred . . . for X-ray examinations," etc. "during the period of such hospital confinement and for ambulance service . . . ," and that the limiting qualification "not to exceed in the aggregate four times the Daily Hospital Indemnity" applies only to the service item immediately preceding the qualifying clause. Defendant, on the other hand, asserts that it is liable only "up to an aggregate amount of four times the daily hospital rate as speci-

fied in the policy." These points of view are widely divergent and, in each instance, understandably self-serving. It is common knowledge that the enumerated items in the policy here under consideration frequently constitute the most costly items of hospital service. As we read the hospital indemnity provisions, the clause covering the miscellaneous hospital expenses is so written as to indicate that the quadruplicate daily indemnity coverage applies to all the enumerated services for the specified periods of time. Such a construction affords to the insured a substantial rather than a token amount of miscellaneous hospital coverage, and it protects the company by imposing a ceiling for the miscellaneous coverage. It would be unrealistic to expect an insured to suppose that a merely nominal sum was to be offered as reimbursement for a number of enumerated miscellaneous hospital services; equally unrealistic to suppose that an insurance company would write policies providing for unlimited coverage.

In Welborn v. Illinois Nat. Cas. Co., 347 Ill App 65 (1952), 106 NE2d 142, the court said (p 68) that in this type of case "there are two well recognized principles of construction of contracts which are pertinent. First, if the literal interpretation of one provision of an insurance policy results in an unreasonable or absurd result, and substantially defeats the object and purpose of the entire contract, it will be rejected and treated as inoperative," relying on 29 Am Jur Insurance § 163 (1940, discussed in § 254 of the 1960 edition), and 44 CJS Insurance § 298 (1945), and "second, the same authorities, and many others, assert the general contract rule of construction that the court should determine the intention from the whole agreement, and endeavor to give a meaning to all provisions, so far as possible, which will render them con-

434

sistent and operative." As the court in Wilson v. Nat. Automobile and Cas. Ins. Co., 22 Ill App2d 34 (1959), 159 NE2d 504, pointed out (p 37): "The general rule of construction applicable to determination of coverage of insurance policies is that such policies be construed liberally in favor of the insured to the end that the insured is not deprived of insurance for which he had paid, except where the policy clearly, definitely, and explicitly requires it (Schmidt v. Equitable Life Assur. Soc. of the United States, 376 Ill 183, 33 NE2d 485)."

Plaintiff should be allowed to present his case under the allegations of Count I and is entitled to reimbursement for his miscellaneous hospital expenses, upon making proof, in an amount not in excess of $720 (4 x $6 x 30) during the first thirty days, and in a further amount not in excess of $1080 (4 x $3 x 90) during the subsequent ninety days of the six-month period covered.

We hold that the trial court erred in striking Count I and entering judgment for defendant. Accordingly, the judgment is reversed and the cause remanded with directions to reinstate Count I of the complaint and to proceed further as indicated.

Judgment reversed and cause remanded with directions.

BRYANT, J., concurs.

BURKE, J., dissenting:
The rule is well established that where provisions of an insurance policy are inconsistent or ambiguous, they are to be construed liberally in favor of the insured. This rule does not authorize "a perversion of language or the exercise of inventive powers for the

purpose of creating an ambiguity where none exists." Maryland Cas. Co. v. Holmsgaard, 10 Ill App2d 1, 10, 133 NE2d 910; Zitnik v. Burik, 395 Ill 182, 187, 69 NE2d 888. The provisions of the policy are to be construed together. All the provisions of the policy contain limits. The "daily hospital indemnity" provision is limited to 30 days at $6 per day, and 90 additional days of hospital confinement at $3 per day. The "surgical" rider lists over 70 types of operations and states a fixed amount of the indemnity for each. In insurance policies, as in other contracts, the benefits depend upon the terms and the premiums paid. Health and accident policies are issued at different premiums with correspondingly varying benefits. For example, the policy sued upon in Count II contains a provision to pay certain expenses incurred during hospitalization but "not to exceed in the aggregate the Maximum Miscellaneous Hospital Expense Accident or Sickness stated in the Schedule . . ." which is $100. That policy was issued in 1959 for an annual premium of $68.60 as compared to the policy in Count I which was issued in 1948 for an annual premium of $20.40.

The language in the policy clearly informs the insured of the benefits he can expect and defines the risk undertaken by the insurer. The clause which plaintiff claims entitles him to unlimited payments during a stay in a hospital provides in clear and unambiguous language for payment of certain hospital expenses up to an aggregate amount of four times the daily hospital rate as specified in the policy. When read in an ordinary and reasonable fashion, the provision contains a list of items payable, the last of which is ambulance service. To say that the limitation of "four times the daily hospital indemnity" applies only to one item ignores the words "in the aggregate." The word "aggregate" according to Webster's

436

New International Dictionary, means "a mass, assemblage, or sum of particulars"; and also "formed by a collection of particulars into a mass or sum . . . ." The phrase "in the aggregate" is defined as "collectively; together." See also Chapin v. Wilcox, 114 Cal 498, 46 P 457, 458; In re Curley's Will, 272 NYS 489; In re Miller's Estate, 168 A 807, (Pa Superior). Unless the limitation applies to expenses incurred for all of the items listed, the words "in the aggregate" would be rendered meaningless. It is a basic rule of construction of contracts that effect and meaning be given to every word, clause and term employed by the parties. Belanger v. Seay & Thomas, Inc., 28 Ill App2d 266, 271, 171 NE2d 418; Konrad v. Hartford Accident & Indemnity Co., 11 Ill App2d 503, 526, 137 NE2d 855.

The trial judge was right in deciding that the insurer satisfied its obligation by paying four times the daily hospital indemnity for each of plaintiff's confinements. The judgment is consistent with the other benefits of the policy which have a maximum limit and with the modest premium charged. The judgment should be affirmed.