In the
United States Court of Appeals
For the Seventh Circuit

No. 01-3684

JOHN F. BELOM,

Plaintiff-Appellant,

v.

NATIONAL FUTURES ASSOCIATION and JOY JU,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01 C 3951--Suzanne B. Conlon, Judge.

Argued February 14, 2002--Decided MARCH 28, 2002


  Before FLAUM, Chief Judge, and BAUER and
EVANS, Circuit Judges.

  EVANS, Circuit Judge.  Belom was company
counsel for LFG (we've shortened its
name), a registered Futures Commission
Merchant and a member of the National
Futures Association (NFA), an association
registered with the Commodity Futures
Trading Commission (CFTC). Joy Ju, an LFG
customer, filed an arbitration demand
against LFG and Belom for damages
allegedly resulting from the wrongful
termination of Ju's ability to place
orders directly with LFG's personnel at
the Chicago Mercantile Exchange. Ju
sought significant damages (about $7.3
million) against LFG and Belom for what
was claimed to be negligence,
recklessness, conversion, constructive
fraud, and the violation of numerous
federal and state statutes and
regulations. Whether any of these claims
have merit, of course, is not before us.

  Belom sought to avoid arbitration,
alleging that he had not consented to
resolve Ju's dispute in that forum. The
NFA denied his request, determining that
its rules required Belom's participation
in arbitration as an employee of LFG.
Belom then filed a complaint against the
NFA and Ju in federal court seeking
declaratory and injunctive relief
excluding him from the Ju arbitration
proceeding. The district court dismissed

his complaint under Rule 12(b)(6) for failure to state a claim for which relief can be granted, a decision that we review de novo. Antonelli v. Sheahan, 81 F.3d 1422, 1427 (7th Cir. 1996).

NFA rules allow a customer to initiate arbitration against any NFA member and its employees for disputes involving commodity future contracts. Belom argues that the NFA rules in this regard violate the Commodity Exchange Act (CEA). Congress amended the CEA in 1974 to establish a comprehensive regulatory structure. To implement this structure, Congress created the CFTC as an independent agency vested with broad authority to adopt rules that, in its judgment, are necessary to carry out the purposes of the CEA. See Geldermann, Inc. v. Commodity Futures Trading Comm'n, 836 F.2d 310, 312 (7th Cir. 1987). The CEArequires a registered futures association to provide for arbitration as a dispute resolution mechanism for its customers. The NFA enacted its arbitration rules to comply with this requirement. Section 2(a) of the NFA code of arbitration reads:

Mandatory Arbitration.

(1) Claims. Except as provided in Sections 5 and 6 of this Code with respect to timeliness requirements, the following disputes shall be arbitrated under this Code if the dispute involves commodity futures contracts:

(i) a dispute for which arbitration is sought by a customer against a Member or employee thereof . . . [.]

Belom argues that this provision violates the CEA and CFTC regulations because they require a member's consent to arbitrate. This argument is undermined by the plain language of the CEA. The CEA provides that an association cannot be registered as a futures association unless the CFTC finds that

the rules of the association provide a fair, equitable, and expeditious procedure through arbitration orotherwise for the settlement of customers' claims and grievances against any member or employee thereof: Provided, That (A) the use of such procedure by a customer shall be voluntary[.]

7 U.S.C. sec. 21(b)(10) (emphasis in original). This language requires the consent only of the customer, not of the futures association member or employee. The plain language of the CFTC regulation implementing this statutory provision also indicates that only the customer's consent to arbitrate is necessary:

A futures association must be able to demonstrate its capability to promulgate rules and to conduct proceedings that provide a fair, equitable and expeditious procedure, through arbitration or otherwise, for the voluntary settlement of a customer's claim or grievance brought against any member of the association or any employee of a member of the association.

17 C.F.R. sec. 170.8. Belom argues that the C.F.R. section's use of the term "voluntary settlement" applies to both the customer and the futures association member or employee. This interpretation, however, is undermined by the plain language of the CEA provision that the C.F.R. regulation was meant to implement. As noted, the CEA's plain language makes it crystal clear that only the customer's consent is required.

Our case law dealing with a parallel provision of the CEA undermines Belom's consent argument. In Geldermann, the plaintiff argued that 7 U.S.C. sec. 7a(11),/1 which required a registered contract market to provide for customer-initiated arbitration, required a member's consent to arbitrate. In holding that the statute did not require a member's consent to arbitrate, we relied on the canon that courts should accord considerable weight to an executive department's construction of a statutory scheme that it has been entrusted to administer. See Geldermann, 836 F.2d at 315 (citing Chevron U.S.A. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 844 (1984)). In Geldermann, the CFTC construed sec. 7a(11) to require commodity exchange members to submit to customer-initiated arbitration. See id. We also relied on the CEA's legislative history, noting that Congress amended the CEA twice without overturning the CFTC's position. See id. at 316. Additionally, we noted that Congress expressly approved the CFTC's position when it amended the

CEA in 1978 and stated that it was not changing the CFTC's position that exchange members must participate in customer-initiated arbitration proceedings. See id.

Our analysis in Geldermann is persuasive here because the CEA provision and CFTC regulation that were at issue there are nearly identical to the futures market provisions at issue here./2 We can assume that Congress intended the same terms used in different parts of the same statute to have the same meaning. See Taracorp v. NL Indus., Inc., 73 F.3d 738, 744 (7th Cir. 1996).

Belom attempts to distinguish his case from Geldermann by noting that he, unlike the Geldermann plaintiff, is a "non-registered individual" who is not a member of an exchange or futures association. We did not distinguish between registered members and nonregistered employees in Geldermann. Additionally, the plain language of the CEA and the CFTC regulations requires futures markets and their employees to participate in arbitration. See 7 U.S.C. sec. 21(b)(10); 17 C.F.R. sec. 170.8.

Belom also argues that the NFA's arbitration provision deprives him of his right to an Article III forum without his consent. This, however, is a new argument, one that was not explicitly before the district court, and as we have often observed, arguments not raised in the district court are waived on appeal. See Pond v. Michelin North America, Inc., 183 F.3d 592, 597 (7th Cir. 1999)./3

Even had Belom preserved the issue for appeal, it would not have helped him because he waived his Article III rights through his voluntary employment with an NFA member. Article III of the United States Constitution safeguards a party's right to have claims decided by a judge who cannot be controlled by other branches of government. See Commodity Futures Trading Comm'n v. Schor, 478 U.S. 833, 848 (1986). The right to an Article III forum is not absolute and may be waived. See id. Where an individual consents to arbitration, he waives the right to an impartial and independent adjudication. See Geldermann, 836 F.2d at 316.

Here, LFG's application for membership in the NFA included "an express agreement by the Applicant that, if admitted to NFA membership, the Applicant shall become and remain bound by all NFA requirements as then and thereafter in effect." See NFA Form 7R at para. 8. One of NFA's requirements was sec. 2(a) of its code of arbitration, which explicitly requires that customer disputes involving commodity futures contracts against members and their employees be arbitrated. Under ordinary principles of contract and agency, Belom agreed to be bound by this code provision when he accepted employment with LFG. See Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 7 F.3d 1110, 1121-22 (3d Cir. 1993) (holding that arbitration agreement of employer bound employee even though employee did not sign agreement); Lee v. Chica, 983 F.2d 883, 886-87 (8th Cir. 1993) (holding same); Arnold v. Arnold Corp., 920 F.2d 1269, 1281-82 (6th Cir. 1990) (holding same); Letizia v. Prudential Bache Sec., Inc., 802 F.2d 1185, 1187-88 (9th Cir. 1986) (holding same). This rule is an outgrowth of the strong federal policy favoring arbitration. See Letizia, 802 F.2d at 1188. Therefore, even if we were to reach the issue, we would have little trouble concluding that Belom waived his right to an Article III forum by accepting employment with LFG.

The district court's decision dismissing Belom's complaint for failure to state a claim is AFFIRMED.

FOOTNOTES

/1 7 U.S.C. sec. 7a(11) was later repealed by Pub. L. 106-554, sec. 1(a)(5) [Title I, sec. 110(2)], Dec. 21, 2000.

/2 Section 7a(11) required a contract market to

[p]rovide a fair and equitable procedure through arbitration or otherwise for the settlement of customers' claims and grievances against any member or employee thereof: Provided, that (i) the use of such procedure by a customer shall be voluntary . . . [.]

See Geldermann, 836 F.2d at 312. The CFTC regulation implementing 7 U.S.C. sec. 7a(11) required every contract market to "adopt rules which provide for a fair and equitable procedure through arbitration or otherwise for the settle-

ment of customer's claims and grievances against any member." See id. at 312-23 (quoting 17 C.F.R. sec. 180.2 (1976)).

/3 Belom attempts to overcome his waiver by citing Amcast Indus. Corp. v. Detrex Corp., 2 F.3d 746 (7th Cir. 1993), in which we exercised our power of lenity to allow the appellee to raise on appeal a pure question of statutory interpretation not raised before the district court. See id. at 749-50. We held in Amcast only that we had the power, not the obligation, to exercise such lenity under certain circumstances. Here, Belom has not presented us with a reason to overlook his waiver, and we decline to do so.