# In the
# United States Court of Appeals
## For the Seventh Circuit

————————

No. 04-2549

PREMCOR USA, INC., and
THE PREMCOR REFINING GROUP, INC.,

*Plaintiffs-Appellants,*

*v.*

AMERICAN HOME ASSURANCE COMPANY,

*Defendant-Appellee.*

————————

Appeal from the United States District Court for
the Northern District of Illinois, Eastern Division.
No. 03 C 7377—**John W. Darrah**, *Judge.*

————————

ARGUED DECEMBER 10, 2004—DECIDED MARCH 9, 2005

————————

Before RIPPLE, MANION, and WOOD, *Circuit Judges.*

MANION, *Circuit Judge.* Premcor USA, Inc., and The
Premcor Refining Group, Inc. (together, "Premcor") sued
American Home Assurance Company ("AHA") for cover-
age of litigation defense costs under an "umbrella" insur-
ance policy (the "AHA policy"). Premcor argued that the
AHA policy required AHA to pay more than two million
dollars in costs that Premcor incurred while defending itself

in an Illinois state court case. The parties filed cross-motions for summary judgment. The district court granted judgment in favor of AHA. Premcor appeals.


I

In 1995, two Premcor employees were fatally injured while working at a Premcor facility in Blue Island, Illinois. Subsequently, their estates initiated negligence actions in Illinois state court to recover damages under the Illinois Wrongful Death and Survival Act, 740 ILCS §§ 180.01 *et seq*. The state trial court granted summary judgment to Premcor in January 2004, but the case presently continues on appeal. To date, Premcor has spent over two million dollars defending this action.

At the time of the accident, Premcor was covered by several insurance policies. The initial layer of insurance was composed primarily of a two million dollar commercial general liability policy (the "Reliance policy") from Reliance National Indemnity Company ("Reliance"). In addition, Premcor had several other insurance policies covering discrete areas such as employers' liability and automobiles. Premcor also contracted with AHA for an umbrella insurance policy that would provide ten million dollars in excess coverage. An umbrella policy is a type of policy that acts both as an excess insurance policy and, in certain circumstances, as a primary insurance policy. Regarding the latter aspect, an umbrella policy provides coverage for those incidents left uncovered by other insurance policies, filling gaps in underlying insurance.

When the accident occurred, Premcor filed a claim with Reliance. The Reliance policy contained a "duty to defend" provision, which provided that Reliance would pay defense costs for any actions covered by the Reliance policy. Reli-

ance, however, subsequently became insolvent, which left Premcor itself to pay the defense costs in the Illinois state court action. After Reliance became insolvent, Premcor filed a declaratory judgment action against AHA in the Northern District of Illinois, arguing that, under the AHA policy, AHA had to "drop down" and pay all defense costs above the amount Premcor received from Reliance, which because of the insolvency was zero.

As this case turns on the precise coverage of the AHA policy, we examine the applicable provisions in some detail. The AHA policy begins with a broad description of its coverage: "[t]o pay on behalf of [Premcor] that portion of the ultimate net loss in excess of the retained limit as hereinafter defined . . . ." Several provisions of the AHA policy add specific contours to this general description. The Declarations page sets forth the Limit of Liability of the AHA policy. This Limit of Liability states that AHA will provide ten million dollars in coverage for any loss in excess of either:

> (1) the amount recoverable under the underlying insurance as set out in the attached Schedule A

or

> (2) $25,000 US ultimate net loss in respect of each occurrence not covered by underlying insurance.

A second provision in AHA's policy further explains AHA's obligation to provide coverage. Specifically, the AHA policy's "retained limit" clause states:

> A. [AHA] shall be liable only for that portion of the ultimate net loss excess of [Premcor's] retained limited defined as either:
>
>> 1. the total of the applicable limits of the underlying policies listed in the Schedule of Underlying

Insurance hereof, and the applicable limits of any other underlying insurance providing coverage to [Premcor]; or

2. the amount stated in Item 3(A-2) of the Declarations as the result of any one occurrence not covered by such underlying policies or insurance; and then up to an amount not exceeding the amount as stated in Item 3(A) of the Declarations as the result of any one occurrence.

The AHA policy defines "ultimate" net loss as:

the total sum which [Premcor], or any company as its insurer, or both become obligated to pay be [sic] reason of personal injury, property damage, . . . and shall also include . . . expenses for doctors, nurses, and investigators and other persons, and for settlement, adjustment, investigation and defense of claims. . . . [AHA] shall not be liable for expenses as aforesaid when such are covered by underlying policies of insurance whether collectible or not.

In short, by defining ultimate net loss, the AHA policy restricts its coverage to situations where either damages or costs exceed the total of the applicable limits of the underlying policies.

Another relevant portion of the AHA policy addresses AHA's liability in instances of insolvency by any underlying insurers. Endorsement 10 provides:

The liability of [AHA] shall not be increased by the refusal or inability of [Premcor] to pay its Self-Insured Retention (or retained limit) or by the refusal or inability of any underlying insurer to pay, whether by Reasons of Insolvency, Bankruptcy, or otherwise.

This endorsement indicates that insolvency by an underlying insurance provider has no effect on the amount of AHA's liability.

In addition to these provisions regarding excess insurance, the AHA policy, as an umbrella insurance policy, also supplies primary coverage in some circumstances. Under a section designated "Defense, Settlement, Supplementary Payments," the AHA policy provides primary coverage "to occurrences covered under this policy but not covered by any underlying policies . . . ." The primary coverage aspect of the AHA policy therefore only exists where there is a hole in the coverage of the underlying insurance.

Notwithstanding the policy language that seems to address insolvency of underlying insurers, Premcor argued in its declaratory judgment action that AHA was required to pay all defense costs because Reliance was insolvent. Premcor maintained that the amount recoverable language in the AHA policy meant that AHA was responsible for all amounts above that which was actually recovered from the underlying insurance. As the underlying insurance paid nothing in this case, Premcor argued that AHA should be responsible for the entire two million dollars.

The parties filed cross-motions for summary judgment and the district court decided in favor of AHA. The district court found that the amount recoverable language in the AHA policy was ambiguous as a matter of Illinois law, but that Endorsement 10 expressly forbade increased liability because of the insolvency of underlying insurance. This appeal followed.

II

We review *de novo* the district court's decision involving cross-motions for summary judgment. *See Huntzinger v.*

*Hastings Mut. Ins. Co.*, 143 F.3d 302, 307 (7th Cir. 1998). Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as matter of law." Fed. R. Civ. P. 56(c). With cross-motions, we construe the evidence and all reasonable inferences in favor of the party against whom the motion under consideration is made. *See Metrop. Life Ins. Co. v. Johnson*, 297 F.3d 558, 561-62 (7th Cir. 2002).

The law of Illinois applies to the interpretation of these contracts. The construction of the provisions of an insurance policy is a question of law, subject to *de novo* review. *See Am. States Ins. Co. v. Koloms*, 687 N.E.2d 72, 75 (Ill. 1997). "In order to ascertain the meaning of the policy's language and the parties' intent, the court must construe the policy as a whole and take into account the type of insurance purchased, the nature of the risks involved, and the overall purpose of the contract." *Emerson Elec. Co. v. Aetna Sur. & Cas. Co.*, 815 N.E.2d 924, 937 (Ill. App. Ct. 2004); *see also Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 607 N.E.2d 1204, 1212 (Ill. 1992); *Transamerica Ins. Co. v. South*, 975 F.2d 321, 327 (7th Cir. 1992) (applying Illinois law) ("All the provisions of the insurance contract, rather than an isolated part, should be read together to interpret it and to determine whether an ambiguity exists."). If the language of the policy is susceptible to more than one meaning, it is considered ambiguous and will be construed strictly against the insurer who drafted the policy and in favor of the insured. *See Maremont Corp. v. Cont'l Cas. Co.*, 760 N.E.2d 550, 554 (Ill. App. Ct. 2001). "However, [a] court 'will not strain to find ambiguity in an insurance policy where none exists.'" *Travelers Ins. Co. v. Eljer Mfg. Co.*, 757 N.E.2d 481, 491 (Ill. 2001) (quoting *McKinney v. Allstate Ins. Co.*, 722 N.E.2d 1125, 1127 (Ill. 1999)).

A

The parties' dispute over the scope of coverage of the AHA policy focuses on the interpretation of the "amount recoverable" language. This language is critical to determine when AHA's obligation to provide excess coverage begins. In the past, Illinois courts have interpreted such amount recoverable language, considered alone, to be ambiguous. *See Donald B. MacNeal, Inc. v. Interstate Fire & Cas. Co.*, 477 N.E.2d 1322, 1324-25 (Ill. App. Ct. 1985). In the *MacNeal* case, the Illinois appellate court indicated "that language might possibly be interpreted either to expose [the excess insurer] only for amounts over the dollar limits of the underlying insurance or to expose [the excess insurer] for amounts which the insured is not able to actually recover from the underlying insurer because of its insolvency." *Id.* at 1325 (quoting *Reserve Ins. Co. v. Pisciotta*, 640 P.2d 764 (Cal. 1982)). Faced with two plausible interpretations of this language, and with no other terms in the policy shedding light on which was proper, the Illinois court found an ambiguity and strictly construed the amount recoverable language against the insurer. *See id.*

Premcor argues *MacNeal* controls and that this court must interpret the "amount recoverable" language to provide coverage. However, the AHA policy is distinguishable from the policy in *MacNeal*. Here, the AHA policy contains several provisions informing the meaning of the "amount recoverable" language, offering the guidance that was lacking in *MacNeal*. A cardinal rule of contract interpretation is that a document "should be read to give effect to all its provisions and to render them consistent with each other." *Mastrobuono v. Shearson, Lehman, Hutton, Inc.*, 514 U.S. 52, 63 (1995); *see also Wuerttemberger v. Cont'l Cas. Co.*, 178 N.E.2d 136, 138 (Ill. App. Ct. 1961). In this case, the relevant provisions show that the AHA policy only covered costs in

excess of the limits of the underlying policy, and the amount recoverable language must be interpreted consistently.

Like the district court, we consider Endorsement 10 to be significant. It states that AHA's liability should not be increased "by the refusal or inability of any underlying insurer to pay, whether by Reasons of Insolvency, Bankruptcy, or otherwise . . . ." Any interpretation of the AHA policy that would lead to an increase in liability because of the insolvency of one of the underlying insurers would not be valid, as it would contradict the express terms of this endorsement. Yet such an increase is what Premcor's interpretation of "amount recoverable" would require. In its brief Premcor acknowledges that if AHA is called upon to pay defense costs "previously owed by the insolvent primary insurer" (Reliance), "this theoretically could increase the excess carrier's total monetary obligation." The language of Endorsement 10, however, prohibits such a result.

A second clause in the AHA policy confirms that AHA's responsibilities are not changed by insolvency. The definition of ultimate net loss in the AHA policy states that "[AHA] shall not be liable for expenses as aforesaid when such are covered by underlying policies of insurance whether collectible or not." The insolvency of Reliance does not require AHA to drop down and pay all defense costs. Rather, the AHA policy specifically provides that AHA will not be liable for defense costs in the case of insolvency, even if Premcor cannot recover from the underlying policy.

The retained limit language is a final provision that demonstrates that the AHA policy does not cover costs in the event of an insolvency of an underlying insurer. "[AHA] shall be liable only for that portion of the ultimate net loss excess of the Insured's retained limit," which in this case is defined as "the total of the applicable limits of the underlying policies listed in the Schedule of Underlying Insurance

hereof."[1] In *MacNeal*, that court commented on cases in which the insolvency of the primary insurer did not require the excess insurer to assume the primary's obligation. The *MacNeal* court distinguished its case from these cases based on policy language nearly identical to the AHA policy retained limit provision.[2] *See id.*

"Clearly the language in *Molina* [*v. Fire Ins. Co.*, 574 F.2d 1176, 1178 (4th Cir. 1978)] and *St. Vincent's* [*Hosp. & Med. Ctr. v. Ins. Co. of Am.*, 457 N.Y.S.2d 670 (N.Y. Sup. Ct. 1982)] reveals that the insurance provided that the excess insurer would pay for losses in excess of a fixed amount, the primary policy limits." *Id.* According to the *MacNeal* court, in cases of insolvency, the retained limit language means that an excess insurer is not obliged to pay costs that would otherwise be borne by the insolvent insurer, but instead is only responsible for providing coverage in excess of the

---

[1] Not raised in this appeal is the obvious question of the premium paid for primary and "umbrella" coverage. "[P]remiums for umbrella policies tend to be comparatively small for the type of risk involved . . . . The umbrella policy issued by [insurer] should be required to contribute only after the limits of the [primary] policy have been reached." *Travelers Indem. Co. v. Am. Cas. Co.*, 786 N.E. 2d 582, 587 (Ill. App. Ct. 2003). *See also Zurich Ins. Co. v. Mail Co.*, 815 F.2d 1122, 1126 (7th Cir. 1987) ("[the excess insurer] did not contract to bear the risk of the primary carrier's insolvency, nor do its premiums reflect the cost that the assumption of this risk would entail").

[2] "In *Molina*, however, the excess policy indemnified the insured for 'the ultimate net loss in excess of the retained limit,' where 'retained limit' was defined as 'the total of the applicable limits of the underlying policies.'[]" *MacNeal*, 477 N.E.2d at 1325 (quoting *Molina v. U.S. Fire Ins. Co.*, 574 F.2d 1176, 1178 (4th Cir. 1978)).

underlying policy limits. *See also, U.S. Fire Ins. Co., Inc. v. Charter Fin. Group, Inc.*, 851 F.2d 957, 959-61 (7th Cir. 1988) (in absence of amount recoverable language, excess policy that referenced limits of underlying insurance started coverage at those limits, whether the underlying insurance was recoverable or not); *Zurich Ins. Co. v. Heil Co.*, No. 85-C-6497, 1986 WL 2607, at *4 (N.D. Ill. Feb. 21, 1986) ("The case authority is clear that where, as here, the excess insurer limited its liability to 'the ultimate net loss in excess of the retained limit' the risk of the primary insurer's insolvency rests with the insured."). S*ee also Zurich Ins. Co. v. Heil Co.*, 815 F.2d 1122, 1126 (7th Cir. 1987) (affirming district court).

Premcor attempts to minimize the effect of the retained limit language by referring to a case from the Fifth Circuit involving an insurance policy with both amount recoverable and retained limit/ultimate net loss provisions. *See Sifers v. Gen. Marine Catering Co.*, 892 F.2d 386, 402-03 (5th Cir. 1990). In *Sifers*, the Fifth Circuit concluded that the amount recoverable language was not ambiguous, but in fact required the excess insurer to cover any amounts above what the underlying insurance actually paid. *See id.* at 401. The Fifth Circuit then decided that this language controlled over the retained limit language that the policy also contained. *See id.* at 402-03.

This is obviously not our case. In *Sifers*, the Fifth Circuit attempted to reconcile seemingly conflicting provisions that each had a clear meaning under Louisiana law. Under Illinois law, that is not our task because Illinois law has found the amount recoverable language to be ambiguous in isolation. Our task is to determine whether this provision remains ambiguous when viewed in the context of the entire AHA policy. It does not.

Interpreting the amount recoverable language in light of the contract as a whole removes the apparent ambiguity

when the amount recoverable language is viewed out of context. Unlike *MacNeal*, this case features several contractual provisions that illuminate the true meaning of this phrase. Endorsement 10, the definition of ultimate net loss, and the retained limit language show that the AHA policy would not assume additional responsibilities to cover defense costs in the event of the insolvency of an underlying insurer. The proper interpretation of the amount recoverable language, which is most consistent with these provisions of the AHA policy, is that AHA only covers costs in excess of the limits of the underlying policy. Therefore, AHA is not required to pay the defense costs that Premcor incurred in the underlying litigation.

## B

Premcor asserts that, at a minimum, the AHA policy covers the cost of defense to the extent it exceeds the two million dollar limit of the underlying Reliance policy. However, the Reliance policy provides unlimited defense costs—it does not limit its coverage to the first two million dollars. And the AHA policy provides, "The Company [AHA] shall not be liable for expenses as aforesaid when such are covered by underlying policies of insurance whether collectible or not." Thus, under the policies, Premcor is not entitled to recover the cost of defense in excess of two million dollars because Reliance's policy covered such costs. This interpretation accords with common sense as well. If Premcor's argument is correct, there would be duplicate coverage by AHA and Reliance for all cases exceeding two million dollars in defense costs, since the Reliance policy provides for the payment of unlimited costs and AHA's obligation, according to Premcor, begins once the costs reach the two million dollar level.

## C

Premcor offers another argument on this appeal—that the AHA policy provides primary insurance in cases where underlying insurance does not. Premcor contends that this gap-filling provision should apply here, alleging the Reliance policy could be read to exclude work-related injuries. Premcor, however, fails to provide any information about other underlying insurance policies and whether they could cover this situation. No matter. We need not tarry over this argument; it was not presented to the district court and was, therefore, waived. *See Williams v. REP Corp.*, 302 F.3d 660, 666 (7th Cir. 2002) ("A party waives any argument that it does not raise before the district court . . .").[3]

## III

Interpreted as a whole, the AHA policy contains no ambiguity. Instead, it provides for excess coverage only after the underlying insurance has been paid to the policy limits. AHA is not required to pay the two million dollars in defense costs, which would have been the obligation of Reliance in the absence of the insolvency. Summary judgment for AHA was correct, and the decision of the district court is

AFFIRMED.

---

[3] Premcor also suggests that, even if the argument is waived, this court should consider it. While we do have the power to consider a waived argument, we have no obligation to do so. *See Belom v. Nat'l Futures Ass'n*, 284 F.3d 795, 799 n.3 (7th Cir. 2002).

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*