942 A.2d 160 (2008)
398 N.J. Super. 529
Nicole HAGER and Mark Hager, Plaintiffs,
v.
Tammy M. GONSALVES and Edilberto Chilito, Defendants.
High Point Insurance Company, as subrogee of Nicole and Mark Hager, Plaintiff-Respondent,
v.
Rutgers Casualty Insurance Company, Defendant-Appellant, and
Tammy M. Gonsalves and Edilberto Chilito, Defendants.
Superior Court of New Jersey, Appellate Division.
Argued January 8, 2008.
Decided March 7, 2008.
*161 Susan L. Moreinis, Collingswood, argued the cause for appellant.
Christopher S. Lipari, Linwood, argued the cause for respondent.
Before Judges SKILLMAN, YANNOTTI and LeWINN.
The opinion of the court was delivered by
SKILLMAN, P.J.A.D.
The issue presented by this appeal is whether the failure of both the operator and the owner of a motor vehicle to cooperate with the vehicle's insurer, thus preventing the insurer from ascertaining whether the operator was a permissive user, provides sufficient grounds for the insurer to disclaim coverage. We conclude that such a failure of cooperation may result in "appreciable prejudice" to the insurer and therefore justify a disclaimer of coverage.
Defendant Rutgers Casualty Insurance Company (Rutgers Casualty) issued an automobile liability policy to defendant Edilberto Chilito insuring his pick-up truck. The policy contained a standard "cooperation clause" that required any person seeking coverage to "[c]ooperate with [the insurer] in the investigation, settlement or defense of any claim or suit."
On the evening of October 18, 2002, defendant Tammy Gonsalves, who was not a named insured under the policy, was operating Chilito's truck in Pleasantville. Gonsalves, who was intoxicated, was involved in two accidents within a period of nine minutes. The first accident did not result in any claim. However, the second accident caused substantial damage to the other car and serious personal injuries to the `other driver, Nicole Hager, which resulted in Hager filing an automobile negligence action.
According to the police report, Gonsalves attempted to make a left-hand turn without yielding to Hager's car, which was traveling in the opposite direction, and the vehicles collided. Two witnesses who were driving behind Hager at the time of the accident informed the investigating police officer that Gonsalves "suddenly" crossed into the opposing lane of traffic, causing the impact. The officer issued Gonsalves summonses for driving while under the influence of alcohol, operating a vehicle without a license, driving while her license was suspended, failing to yield at an intersection and reckless driving.
Neither Gonsalves nor Chilito informed Rutgers Casualty of the accident. Rutgers Casualty became aware of the accident upon receipt of a letter from Hager's counsel more than five weeks after the accident. That same day, a Rutgers Casualty claims adjuster sent a letter to Chilito, by both certified and regular mail, which indicated that his vehicle had been involved in an accident on October 18, 2002 and reserved Rutgers Casualty's right to disclaim coverage. Chilito did not respond to this letter.
The claims adjuster then referred the matter to Rutgers Casualty's special investigation unit (SIU), which has responsibility for investigating claims that raise coverage questions. On January 31, 2003, an SIU investigator placed a telephone call to *162 Gonsalves' home. The person who answered told him Gonsalves was at work and would return the call. On February 14, 2003, the SIU investigator called Chilito's home and left a message on his answering machine. Neither Gonsalves nor Chilito responded to these telephone calls.
The SIU investigator followed up these telephone calls with letters, dated February 14, 2003, to both Gonsalves and Chilito, which asked them to call him regarding the October 18, 2002 accident. However, neither responded.
On March 3, 2003, the investigator again sent letters, by certified mail, return receipt requested, to Gonsalves and Chilito. In the, letters, the investigator warned that, absent a response, Rutgers Casualty would consider the two uncooperative and close the case. The investigator received return receipts acknowledging receipt of both letters. However, Gonsalves and Chilito again failed to respond to Rutgers Casualty's letters.
Rutgers Casualty's SIU investigator then called the Pleasantville municipal court clerk to determine the status of the motor vehicle summonses issued to Gonsalves. The clerk indicated that Gonsalves had failed to respond to the summonses and that a warrant had been issued for her arrest.
On May 1, 2003, Rutgers Casualty notified Hager's counsel that it was denying coverage for the accident due to lack of cooperation. Hager's counsel then notified Hager's insurer, plaintiff High Point Insurance Company (High Point), that Hager would be pursuing a claim under the uninsured (UM) motorist provisions of her policy.
Thereafter, three separate actions were filed relating to the October 18, 2002 accident: Hager filed an automobile negligence action against Gonsalves and Chilito; Rutgers Casualty filed an action for a declaration that the policy it had issued to Chilito was void and that it had no obligation to provide coverage to Gonsalves or Chilito for the accident; and High Point filed an action against Gonsalves, Chilito and Rutgers Casualty that sought, among other things, a declaration that Rutgers Casualty policy provided coverage to Gonsalves and Chilito for the accident. The trial court subsequently consolidated the Hager and High Point actions.[1]
Notwithstanding its prior denial of coverage, Rutgers Casualty assigned an attorney to defend Gonsalves and Chilito in the automobile negligence action, while maintaining its reservation of rights. This assigned attorney sent a series of letters to Gonsalves and Chilito, asking them to contact him regarding the pending action and explaining the urgency of the situation, but he never received any response.
The issue of Rutgers Casualty's obligation to provide coverage to Gonsalves and Chilito' for the October 18, 2002 accident was brought before, the trial court by Rutgers Casualty's and High Point's cross-motions for summary judgment. The trial court concluded that even though Gonsalves and Chilito had "utterly failed in their duty under the policy to cooperate with Rutgers[,]" Rutgers Casualty had failed to show that it suffered "appreciable prejudice" as a result of this failure. The court found that it was "overwhelmingly clear" based on the police report and witness statements that Gonsalves was responsible for the accident. The court also rejected as "speculative" Rutgers Casualty's arguments that Gonsalves's and Chilito's failure to cooperate had prevented Rutgers Casualty from determining whether Gonsalves was a permissive user *163 of Chilito's pick-up truck or whether any establishment had served Gonsalves alcoholic beverages while she was visibly intoxicated and therefore could be held liable in a dramshop action. Accordingly, the court granted High Point's motion for a declaration that Rutgers Casualty must provide coverage to Gonsalves and Chilito despite their failure to cooperate.
Following this ruling, the trial court granted Hager's motion for a summary judgment on liability against Gonsalves and Chilito and an arbitration award was entered in her favor for $130,000. The parties subsequently entered into a consent judgment that preserved Rutgers Casualty's right to appeal the order declaring that its policy provides coverage to Gonsalves and Chilito for the October 18, 2002 accident, but provided that, if the order is affirmed on appeal, Rutgers Casualty will tender its $50,000 policy limit to Hager and reimburse High Point for the $10,716 it paid Hager for the damage to her car. On appeal, Rutgers Casualty argues that an insurer may disclaim coverage based on its insured's breach of the cooperation clause of the policy without showing that it suffered appreciable prejudice as a result of the breach. Rutgers Casualty also argues, in the alternative, that it did suffer appreciable prejudice as a result of Gonsalves's and Chilito's failure to cooperate.
We conclude that an insurer must show that it was appreciably prejudiced by its insured's failure to cooperate in order to disclaim coverage based on that failure. However, we also conclude that Rutgers Casualty made a sufficient showing that it was appreciably prejudiced by Gonsalves's and Chilito's failure to cooperate because that failure prevented Rutgers Casualty from ascertaining the facts relevant to the determination whether Gonsalves was a permissive user of Chilito's pick-up truck. Therefore, Rutgers Casualty properly disclaimed coverage for the Hager claim.
The leading case dealing with the right of an insurer to disclaim coverage based on a breach of its insured's duties under the policy is Cooper v. Government Employees Insurance Company, 51 N.J. 86, 237 A.2d 870 (1968). Cooper involved an insured's alleged breach of the duty to give notice of an accident "as soon as practicable." Id. at 88, 237 A.2d 870. The Court held that even if this duty was breached, the insurer could not disclaim coverage unless it could show a likelihood that it had suffered "appreciable prejudice" as a result of that breach:
[I]t becomes unreasonable . . . to find that the carrier may forfeit the coverage, even though there is no likelihood that it was prejudiced by the breach. To do so would be unfair to insureds. It would also disserve the public interest, for insurance is an instrument of a social policy that the victims of negligence be compensated. . . .
The insurance contract not being a truly consensual arrangement and being available only on a take-it-or-leave-it basis, and the subject being in essence a matter of forfeiture, we think it appropriate to hold that the carrier may not forfeit the bargained-for protection unless there are both a breach of the notice provision and a likelihood of appreciable prejudice.
[Id. at 94, [237 A.2d 870] (footnotes omitted).]
Although Cooper dealt with an insured's breach of its obligation to give the insurer timely notice of an accident, we subsequently held in Solvents Recovery Service of New England v. Midland Insurance Company, 218 N.J.Super. 49, 55, 526 A.2d 1112 (App.Div.1987), that the requirement that an insurer show appreciable prejudice as a result of an insured's breach of its *164 duties under the policy also applies to a breach of the duty of cooperation:
We are not persuaded that where the insured has acted in good faith the consequences of a violation of the condition that the insured cooperate with the company and afford the company the right to control both the litigation and the settlement of claims should weigh any more heavily in favor of forfeiture of coverage, absent a showing of appreciable prejudice, than violations of conditions . . . which require timely notification of the happening of the occurrence and receipt of a claim or suit.
. . . We are satisfied that the policy enunciated by our Supreme Court in Cooper, of requiring the carrier to bear the burden of persuasion of a likelihood of appreciable prejudice is the standard that should be applied to [the duty of cooperation as well as the duty of notification].
Subsequent trial court opinions have also applied the Cooper requirement of a showing of "appreciable prejudice" as a precondition of an insurer's disclaimer of coverage based on an insured's breach of its duty of cooperation. See, e.g., Haardt v. Farmer's Mut. Fire Ins. Co. of Salem County, 796 F.Supp. 804, 809 (D.N.J.1992) ("In New Jersey, the failure of an insured to comply with a `cooperation clause' will not cause a forfeiture of insurance "benefits unless the insurer demonstrates that it will suffer appreciable prejudice."); Prudential Prop. & Cas. Ins. Co. of N.J. v. Nardone, 332 N.J.Super. 126, 138-39, 752 A.2d 859 (Law Div.2000) (same). Moreover, in Gazis v. Miller, 186 N.J. 224, 230, 892 A.2d 1277 (2006), the Court noted, with apparent approval, that "New Jersey courts have applied the Cooper prejudice rule in various other contexts[,]" citing, among other cases, Solvents Recovery Service.
We adhere to our holding in Solvents Recovery Service and reject Rutgers Casualty's argument that the requirement of a showing of "appreciable prejudice" does not apply to an insurer's disclaimer of coverage based on an insured's breach of the duty of cooperation. We turn next to the question whether Rutgers Casualty made the required showing of such prejudice.
The Court in Cooper held that the insured had not breached its duty to give timely notice of the accident in issue. 51 N.J. at 94-95, 237 A.2d 870. Therefore, the Court had no occasion to consider the kind of evidence an insurer would need to present to show appreciable prejudice as a result of its insured's alleged breach.
However, in Sagendorf v. Selective Insurance Company of America, 293 N.J.Super 81, 93, 679 A.2d 709 (App.Div.1996), we indicated, quoting Morales v. National Grange Mutual Insurance Company, 176 N.J.Super. 347, 355-56, 423 A.2d 325 (Law Div.1980), that "two variables" generally should be considered in determining whether an insurer was appreciably prejudiced by a breach of the insured's duties under the policy: first, "whether substantial rights have been irretrievably lost" as a result of the insured's breach, and second, "the likelihood of success of the insurer in defending against the accident victim's claim" had there been no breach.
We agree with the trial court's conclusion that it is overwhelmingly clear from the police report and witness statement that Gonsalves was responsible for the accident with the Hager vehicle. Indeed, Rutgers Casualty's claims adjuster conceded at her deposition that Gonsalves was at fault in the accident. We also agree with the trial court's conclusion that the suggestion that a dispenser of alcoholic beverages could have served Gonsalves while she was visibly intoxicated and *165 therefore could also be found responsible for the accident in a dramshop action is completely speculative. Moreover, since Hager's damages for the personal injuries suffered in the accident appear to substantially exceed the $50,000 coverage limit of the policy issued to Chilito, Rutgers Casualty undoubtedly would be liable for that amount even if a dramshop operator was also liable. Therefore, we see no basis for concluding that there would have been a "likelihood of success of [Rutgers Casualty] defending against [Hager's] claim" had Gonsalves and Chilito not breached the duty of cooperation. Sagendorf, supra, 293 N.J.Super. at 93, 679 A.2d 709.
However, we take a different view of the effect of Gonsalves's and Chilito's failure to cooperate upon Rutgers Casualty's ability to determine whether the policy issued to Chilito provided coverage to Gonsalves. Gonsalves was not a named insured under that policy or a resident of Chilito's household. Consequently, Gonsalves would have been entitled to coverage under the Rutgers Casualty policy only if she were a permissive user of Chilito's vehicle at the time of the accident. See French v. Hernandez, 184 N.J. 144, 151-57, 875 A.2d 943 (2005). Gonsalves's and Chilito's total failure to respond to any of Rutgers Casualty's numerous inquiries prevented Rutgers Casualty from determining the nature of the relationship between Gonsalves and Chilito and whether Chilito had given Gonsalves permission to drive his vehicle. We see no basis for simply assuming that Gonsalves was a permissive user of Chilito's vehicle or characterizing her lack of permission as only a speculative possibility. Therefore, as a result of Gonsalves's and Chilito's failure to cooperate, Rutgers Casualty "irretrievably lost" the opportunity to ascertain the true facts relating to whether Gonsalves had permission to use Chilito's truck, which entitled Rutgers Casualty to disclaim coverage for the Hager accident. Sagendoll, supra, 293 N.J.Super. at 93, 679 A.2d 709.
There are two other circumstances that support this conclusion. First, there was a total lack of cooperation on the part of Gonsalves and Chilito. The cases High Point cites in its brief, such as Pearl Assurance Company v. Watts, 58 N.J.Super. 483, 156 A.2d 725 (App.Div.1959) and Mariam v. Bender, 85 N.J.Super. 490, 205 A.2d 323 (App.Div.1964), certif. denied, 44 N.J. 409, 209 A.2d 143 (1965), involved situations where an insured delayed giving notice of an accident or extending cooperation rather than, as in this case, totally failing to cooperate with the insurer. In Solvents Recovery Service, we suggested that an insured's "good faith" should be a precondition of obtaining the benefit of the Cooper "appreciable prejudice" rule. 218 N.J.Super. at 55, 526 A.2d 1112. We do not need to explore this suggestion further to decide the present appeal. We only conclude that it would be unfair to impose liability upon Rutgers Casualty by simply assuming Gonsalves was a permissive user of Chilito's vehicle when, by even minimal cooperation with Rutgers Casualty, Gonsalves and Chilito could have easily provided the information necessary to resolve this issue. Cf. Cooper, supra, 51 N.J. at 94, n. 3, 237 A.2d 870 (noting that "the carrier of course does not have to speculate upon and rebut hypothetical possibilities when the insured alone is in a position to make an affirmative showing of the material facts").
Second, the coverage claim against Rutgers Casualty is being pursued by another insurance company, High Point, rather than by Rutgers Casualty's insured or the injured party. The "public interest" in providing compensation to "victims of negligence" was an essential component of the Court's rationale for adopting the "appreciable *166 prejudice" rule in Cooper, supra, 51 N.J. at 94, 237 A.2d 870. In this case, however, High Point has already compensated Hager for the damage to her car and, based on our conclusion that Rutgers Casualty was entitled to disclaim coverage for Gonsalves and Chilito, High Point will now be obligated under the uninsured motorist coverage of Hager's policy[2] to compensate her for her personal injuries. See N.J.S.A. 17:28-1.1(e)(2)(b); Shaw v. City of Jersey City, 174 N.J. 567, 575, 811 A.2d 404 (2002). We do not question High Point's standing to pursue such a coverage claim. See Marshall v. Raritan Valley Disposal, 398 N.J.Super. 168, 177-78, 940 A.2d 315 (App.Div.2008). But we believe that any reasonable doubt regarding the adequacy of Rutgers Casualty's showing of appreciable prejudice should be resolved in its favor when the party pursuing the claim is neither its insured nor the injured party.
Reversed.
NOTES
[1] The record does not indicate the disposition of the action filed by Rutgers Casualty.
[2] Hager's policy provided $100,000 of uninsured motorist coverage.