In the

# United States Court of Appeals

## For the Seventh Circuit

_____

Nos. 14-1242, 14-1356, 14-1359

KMART CORPORATION,

*Plaintiff-Appellant/Cross-Appellee,*

*v.*

FOOTSTAR, INC.,

*Defendant-Cross-Appellant,*

and

LIBERTY MUTUAL FIRE INSURANCE
COMPANY,

*Defendant-Appellee/Cross-Appellant.*

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 09-cv-3607 — **Susan E. Cox**, *Magistrate Judge.*

_____

ARGUED SEPTEMBER 19, 2014 — DECIDED FEBRUARY 4, 2015

_____

Before BAUER, ROVNER, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Under an agreement between Footstar and Kmart, Footstar operated the footwear departments in various Kmart stores as though they were islands. Footstar employees could only work in those departments unless they had written permission from Kmart. On July 27, 2005, a Footstar employee tried to help a customer get an infant carrier off a shelf outside the footwear department and the customer was injured. She sued, and Kmart eventually sought indemnification for the settlement and defense costs from Footstar and its insurer, Liberty Mutual. We affirm the magistrate judge's finding that Footstar and Liberty Mutual both had a duty to defend beginning the day Kmart formally requested coverage since the injury was potentially coverable under the agreement and insurance policy. However, we reverse and hold neither Liberty Mutual nor Footstar had a duty to indemnify Kmart because the injury did not occur "pursuant to" or "under" the agreement between Kmart and Footstar. That agreement specifically precluded Footstar employees from working outside of the footwear department, where the injury occurred, and actions taken in contravention of the agreement were not "pursuant to" or "under" it. We also affirm the magistrate judge's decisions that Liberty Mutual did not deny coverage in bad faith and that Kmart did not breach the relevant notice provisions such that Liberty Mutual and Footstar could withhold defense costs. We also find any argument about prejudgment interest has been waived.

## I. BACKGROUND

Footstar and Kmart entered into an agreement authorizing Footstar to operate the footwear department in hundreds of Kmart stores throughout the country. In essence, the

footwear department was a store within the larger Kmart store. As Section 3.3 of the Master Agreement between Kmart and Footstar noted, "[Footstar] shall have the right to sell only the Licensed Footwear specified in this Agreement in the Footwear Departments, and shall sell or furnish no other merchandise or services in the Stores without the prior written permission of [Kmart]."

Section 18.1 of the Master Agreement required Footstar to defend and indemnify Kmart under certain conditions:

> [Footstar] shall reimburse, indemnify, defend and hold harmless [Kmart] … from and against any and all damage … arising out of [Footstar's] performance or failure to perform under this Agreement ….

That same section also required Footstar to obtain additional insurance coverage for Kmart:

> [Footstar] agrees to obtain and keep in force … appropriate insurance for claims against [Kmart] and [Footstar] for personal injury … arising out of or relating to the goods and services provided pursuant to this Agreement …

Footstar fulfilled its obligation to obtain additional insurance by contracting with Liberty Mutual. Pursuant to that Policy, Liberty Mutual would defend and indemnify Footstar as well as Kmart, as an additional insured, under certain conditions. For Kmart, that coverage was dictated by Section II, which reads in relevant part:

> WHO IS AN INSURED is amended to include … [any entity] for whom you have agreed in writing to provide liability insurance. But:

The insurance provided by this amendment:

1. Applies only to "personal injury" or "property damage" arising out of (a) "your work" … ;

2. Applies only to coverage and limits of insurance required by the written agreement, but in no event exceeds either the scope of coverage or the limits of insurance provided by this policy; ….

On July 27, 2005, a customer named Judy Patrick walked into a Kmart store in Hollywood, Florida. According to her complaint, she asked for assistance from Alex Sehat, who turned out to be a Footstar employee, in getting a stroller down from a shelf. Sehat, along with a Kmart employee, reached up and attempted to bring the stroller down. As they were bringing it down, an infant carrier inside the stroller fell and struck Patrick in the face. The accident took place in the infant/stroller department, which is entirely outside of the Footstar department.

Patrick sued Kmart on May 17, 2006, alleging negligence, with no mention of Footstar in her initial complaint. *See Patrick v. Kmart Corp.*, No. 06-7117 (Fla. Cir. Ct.). But Patrick's counsel discovered during the course of the litigation that Sehat was actually a Footstar employee and called Footstar in May 2007 to get Sehat's employment records. Footstar contacted Liberty Mutual, as evidenced by an internal claim file created by a Liberty Mutual representative on June 6, 2007, in which Liberty Mutual employees began entering notes. Though potentially privileged, the notes were apparently inadvertently turned over during discovery of the present dispute. Because we do not need to use the notes to de-

cide the case, we will not discuss the potentially privileged information.

On January 24, 2008, Kmart defense counsel wrote to Footstar formally requesting defense and indemnification for the first time. Footstar forwarded the request to Liberty Mutual on January 30, and Patrick amended her complaint two days later to include Footstar as a defendant. Liberty Mutual wrote Kmart refusing to defend or indemnify, stating: "Footstar is not responsible for the referenced claim as it is not a product liability incident." Kmart settled with Patrick eight months later for $300,000 and $10,000 in Kmart gift cards.

Kmart then filed a complaint in this action originally against Footstar only, but then added Liberty Mutual, alleging both owed Kmart a duty of defense and indemnification for the *Patrick* suit. The magistrate judge entered partial summary on Kmart's breach of contract and declaratory judgment counts, finding both defendants owed a duty to defend, but only as of January 24, 2008, when Kmart first requested defense. The court found Liberty Mutual and Footstar also had a duty to indemnify but only for Footstar's relative fault, which a jury apportioned at 15%. The court also found Liberty Mutual did not act in bad faith by denying coverage and Kmart did not breach the notice provisions of the Policy and Master Agreement. Kmart appealed naming only Liberty Mutual as an Appellee, while Liberty Mutual and Footstar cross-appealed.

## II. ANALYSIS

The issues on appeal are whether: (1) Footstar and/or Liberty Mutual had a duty to indemnify Kmart; (2) Liberty Mutual and/or Footstar had a duty to defend Kmart and, if

so, when that duty began; (3) Liberty Mutual acted in bad faith by denying coverage; (4) Kmart breached the notice provisions of the Policy and Master Agreement; and (5) the court erred in denying Kmart's motion for prejudgment interest.

We review the magistrate judge's grant of summary judgment *de novo*. *Doe v. Archdiocese of Milwaukee*, 772 F.3d 437, 440 (7th Cir. 2014). Our review is under New Jersey law for the Policy and Illinois law for the Master Agreement since they both had forum selection clauses. We will give effect to the choice of law clauses so long as that law respects such clauses, which both parties argue (and we find) Illinois and New Jersey do. *Jackson v. Payday Fin., LLC*, 764 F.3d 765, 774–75 (7th Cir. 2014).

## A. Liberty Mutual and Footstar Did Not Have a Duty to Indemnify

Liberty Mutual and Footstar appeal the magistrate judge's determination that they had a duty to indemnify Kmart for the *Patrick* suit. The magistrate judge found Liberty Mutual and Footstar liable because it determined the injury arose from Footstar's work. However, Liberty Mutual /Footstar contend the court ignored the requirement that any injury had to arise "pursuant to" or "under" the Master Agreement to trigger indemnification, and the Master Agreement explicitly prohibited Sehat's out-of-department action that resulted in the injury. We agree with Liberty Mutual and Footstar.

Insurance contracts are interpreted under the same rules of construction that are generally applicable to other contracts. *Norem v. Lincoln Benefit Life Co.*, 737 F.3d 1145, 1148–49

(7th Cir. 2013) (Illinois law); *Selective Ins. Co. of Am. v. Hudson E. Pain Mgmt.*, 46 A.3d 1272, 1276 (N.J. 2012) (New Jersey law). The duty to indemnify "only arises where the insured's activity and the resulting damages actually fall within the coverage of the policy." *Rosalind Franklin Univ. of Med. & Sci. v. Lexington Ins. Co.*, 8 N.E.3d 20, 39 (Ill. App. Ct. 2014) (Illinois law); *Polarome Int'l., Inc. v. Greenwich Ins. Co.*, 961 A.2d 29, 48 (N.J. Super. Ct. App. Div. 2008) (noting duty to indemnify exists under New Jersey law for those "occurrences for which the policy provides coverage"). In order to determine whether an activity actually falls within the coverage of the policy, we review the plain language of the policy. *Kieffer v. Best Buy*, 14 A.3d 737, 743 (N.J. 2011) (New Jersey law); *Rosalind*, 8 N.E.3d at 36 (Illinois law). "Words and phrases that are not defined in the policy are to be given their plain and ordinary meaning." *Norem*, 737 F.3d at 1149 (Illinois law); *Pizzullo v. N.J. Mfrs. Ins. Co.*, 952 A.2d 1077, 1088–89 (N.J. 2008) (New Jersey law). "[I]ndemnity contracts are to be strictly construed, and any ambiguity in the agreement is to be construed most strongly against the indemnitee," in this case, Kmart. *Blackshare v. Banfield*, 857 N.E.2d 743, 746 (Ill. App. Ct. 2006) (Illinois law); *Kieffer,* 14 A.3d at 743 (New Jersey law).

We begin with Liberty Mutual's obligations in the Policy. Under subpart 1 of the additional insured clause, Liberty Mutual was liable to Kmart for injuries "arising out of" Footstar's "work." Under subpart 2, the Policy applies only to "coverage and limits of insurance required by" the Master Agreement, but coverage will "in no event exceed[] either the scope of coverage or the limits of insurance provided by this policy." The parties dispute what acts give rise to insurance under the Policy. Kmart argues the only acts covered

are those that fall under subpart 1 and one need not even look at the Master Agreement. Kmart says under subpart 2, "scope of coverage" means the type of insurance (*e.g.*, blanket, malpractice, personal injury) and "limits" means the payout (*e.g.*, a $5 million policy) and therefore subpart 2 does not affect which acts give rise to coverage. Conversely, Liberty Mutual argues subpart 1 could set forth the acts that give rise to coverage, but so could subpart 2. It says the phrase "scope of coverage or limits of insurance" explains which underlying acts will be insured, and the Policy will cover the narrower of those acts between the Policy or the Master Agreement. In other words, Liberty Mutual/Footstar argue if subpart 2's incorporation of the Master Agreement provides more narrow coverage, it controls and we need not look at subpart 1.

We agree with other courts that have analyzed these exact subparts in Liberty Mutual's Policy and found that subpart 2 incorporates the Master Agreement and requires us to look at the Master Agreement to determine what acts could give rise to coverage. *See Liberty Mut. Ins. Co. v. Cont'l Res. Inc.*, No. 10-35, 2011 U.S. Dist. LEXIS 80152, at *17–18, *24–26 (D. Mont. Apr. 25, 2011) (interpreting contract based on subpart 2); *Jones v. Francis Drilling Fluids Ltd.*, 642 F. Supp. 2d 643, 663–64 (S.D. Tex. 2009) (referring to master services agreement based on subpart 2); *Nat'l Union Fire Ins. Co. v. Liberty Mut. Ins. Co.*, No. 03-80106, 2008 U.S. Dist. LEXIS 14291, at *12–13 (S.D. Fla. Feb. 26, 2008) (noting subpart 2 "specifically refers to and incorporates the lease agreement"). This reading reflects the parties' intent that Footstar obtain a certain type of additional insurance for Kmart. The parties' intent is clearly reflected in the Master Agreement that certain acts will be covered, and Liberty Mutu-

al/Footstar's reading of the Policy ensures those acts get covered since it specifically incorporates the Master Agreement. Kmart's reading does not necessarily achieve the same result since it does not incorporate the Master Agreement. We are to interpret the Policy to ensure the "expectations of the parties will be fulfilled," and Liberty Mutual/Footstar's reading achieves that result. *Flomerfelt v. Cardiello*, 997 A.2d 991, 996 (N.J. 2010). The best case scenario for Kmart is that subpart 2 is ambiguous, in which case we would still adopt Liberty Mutual/Footstar's reading because the clause should be interpreted against Kmart as the indemnitee. *See Kieffer,* 14 A.3d at 743.

The next step under the Policy's terms is to determine which coverage is more narrow: (1) subpart 1, which limits coverage to injuries "arising out of [Foostar's] work" where Footstar's "work" is defined as "Work or operations performed by you or on your behalf," or (2) the terms of the Master Agreement, which cover "personal injury … arising out of or relating to the goods and services provided pursuant to this Agreement." Both provide coverage for acts "arising out of" Footstar's work, which is a phrase New Jersey and Illinois courts have broadly interpreted. *See, e.g., Fed. Home Loan Mortg. Corp. v. Scottsdale Ins. Co.*, 316 F.3d 431, 444 (3d Cir. 2003) ("New Jersey courts have given a broad and liberal interpretation to common insurance policy language pertaining to coverage for additional insured parties for injuries 'arising out of' work performed by the main policyholder."); *Am. Econ. Ins. Co. v. DePaul Univ.*, 890 N.E.2d 582, 588 (Ill. App. Ct. 2008) ("'[A]rising out of' is 'both broad and vague, and must be liberally construed in favor of the insured; accordingly, 'but for' causation, not necessarily proximate causation, satisfies this language.' Further, 'arising out

of' has been held to mean originating from, having its origin in, growing out of and flowing from." (alterations omitted) (citations omitted) (some internal quotation marks omitted)).

However, "arising out of" does not exist in a vacuum in either subpart 1 or the Master Agreement. Both are modified, in subpart 1 by "[Footstar's] work" and in the Master Agreement by "goods and services provided pursuant to this Agreement." This is where the difference in coverage becomes apparent. The Policy covers any act that arises out of Footstar's work or operations, whatever and wherever that may be. Conversely, the Master Agreement limits the coverage to only that work provided for in the Agreement, meaning only those acts performed in the footwear department. *See* Master Agreement, Section 3.3 (stating that Footstar *"shall sell or furnish no other merchandise or services in the Stores without the prior written permission of* [Kmart]" (emphasis added)). So, when Sehat helped Patrick with the carrier, it is possible her injury arose from his "work" since his work brought him to the store. But he was not working "pursuant to" the Master Agreement since he was acting outside the footwear department. In fact, he was explicitly violating the Master Agreement. That is why Kmart originally filed a breach of contract count against Footstar relating to Section 3.3—Kmart knew that Sehat was acting beyond his contractual authority and violated Section 3.3. Since Sehat was acting in an extra-contractual manner and not "pursuant to this Agreement," there is no indemnification requirement.

Turning to Footstar, it had a duty to indemnify for those injuries "arising out of [Footstar's] performance or failure to perform under this Agreement." Again, any indemnification obligation only relates to those acts taken "under [the]

Agreement." A breach of contract, however, was not a "performance" under the Master Agreement—it was an act taken in direct violation of the contract. For the same reasons as with Liberty Mutual, Footstar had no indemnification obligation for its performance.

Kmart might have been able to argue that Footstar failed to perform under the Agreement by violating Section 3.3, but it chose to proceed under a different theory in front of the magistrate judge and therefore waived the argument on appeal. *See Frey Corp. v. City of Peoria*, 735 F.3d 505, 509 (7th Cir. 2013) ("A party 'waive[s] the ability to make a specific argument for the first time on appeal when the party fail[s] to present that specific argument to the district court, even though the issue may have been before the district court in more general terms.'"). In its motion for summary judgment in front of the magistrate judge, Kmart implicitly argued there was no breach of Section 3.3 because it contends Footstar agreed that its employees could assist Kmart customers in all areas of the store. In support, Kmart argues that there was an oral modification to Section 3.3 in the1990s allowing Footstar employees to act outside the footwear department without written permission. Not only is the evidence of any modification weak, but the Master Agreement was amended and restated in 2005, after this alleged revision, without any change to Section 3.3. So, the fully integrated Master Agreement shows no evidence that Footstar employees could act beyond providing Footstar services without written permission and we agree with the magistrate judge that Kmart has not demonstrated a change to Section 3.3. Kmart also argues that Footstar's interrogatory admissions that a Footstar employee was "permitted" to assist a customer who is "palpably in need of assistance … particularly in the event of a po-

tential threat to the customer's safety" and could help a customer "if necessary" without breaching the agreement is an acknowledgment that Footstar employees could go beyond the footwear department without permission. We reject that argument and instead read it is as admission that Footstar employees had an obligation to act humanely towards a customer threatened by danger. That is not the same thing as admitting that Section 3.3's writing requirement no longer existed. Since Section 3.3 remained in effect and Kmart did not pursue a theory of breach of that section in front of the magistrate judge (we can only speculate that it did not do so because admitting a breach would have likely relieved Liberty Mutual from any indemnity obligation since Liberty Mutual did not have the "failure to perform" language in its portion of the Master Agreement), Kmart has waived the argument here.

Kmart's final argument for indemnity is that the injury arose from Footstar's obligation to "control" the premises, as it claims is required under Section 12.1 of the Master Agreement. Kmart points to language in the *Patrick* complaint that Footstar "negligently and carelessly … control[led]" the premises by "failing to properly remove unsecured overhead merchandise … thereby creating an unsafe, dangerous, and hazardous condition … and it further represented to its patrons that its premises was safe and suitable when, in fact, it was not because of the hazardous condition." Kmart also points to the allegations in the complaint that Footstar negligently "fail[ed] to provide adequate warnings" regarding unsafe conditions. All of this, Kmart alleges, shows that the accident arose from Footstar's duty to "control." Section 12.1 states that Footstar:

> shall exercise control over such employees, including hiring, firing, promoting, determining wages and work procedures and the like ("Employee Action"), which control shall be at Footstar's direction subject to [union contracts, rules and regulations, and laws]. Footstar shall be responsible for all Employer Actions and shall reimburse, indemnify, defend and hold [Kmart] harmless from and against any and all loss, damage, cost, expense or penalty, or any claim or action therefor, arising out of any such Employer Action.

This section represents Footstar's obligation to control its employees through various acts (*e.g.,* hiring and firing, determining policies). There is nothing in this section that requires Footstar to control any premises, let alone the premises outside of the footwear department. In fact, as discussed, Footstar was explicitly supposed to stay out of other parts of the store. *See* Master Agreement, Section 3.3. So, the accident did not arise from Footstar's performance or failure to perform under Section 12.1.

We finally reject Kmart's argument that Liberty Mutual was estopped from denying coverage. An insurer under New Jersey law is only estopped after timely notice and a direct request for coverage. *Griggs v. Bertram*, 443 A.2d 163, 168 (N.J. 1982) (noting estoppel applies "[u]pon the receipt from its insured of a claim or notification of an incident that may give rise to a claim"). Kmart did not make a direct request from Liberty Mutual, instead sending word through Footstar, and did not give notice until one-and-a-half years after receiving the complaint, which can hardly be timely.

Our holding means we do not need to determine whether the court properly handled the issue of Footstar or Liberty Mutual's relative fault since there is no indemnification requirement and relative fault is not a factor.

### B. Liberty Mutual and Footstar Had a Duty to Defend and Are Liable for Defense Costs from When They Received Notice

Kmart argues that even if Liberty Mutual and Footstar did not have a duty to indemnify, they still had a duty to defend. The duty to defend is broader than the duty to indemnify. *Chandler v. Doherty*, 702 N.E.2d 634, 637 (Ill. App. Ct. 1998) ("In Illinois, an insurer may be required to defend its insured even when there will ultimately be no obligation to indemnify."); *Jolley v. Marquess*, 923 A.2d 264, 274 (N.J. Super. Ct. App. Div. 2007) ("The duty to defend is broader than the duty to indemnify" under New Jersey law). An insurer has a duty to defend unless "the allegations set forth in the complaint fail to state facts that bring the case within, or potentially within, the coverage of the policy." *Health Care Indus. Liab. Ins. Program. v. Momence Meadows Nursing Ctr., Inc.*, 566 F.3d 689, 694 (7th Cir. 2009) (quoting *Valley Forge Ins. Co. v. Swiderski Elecs., Inc.*, 860 N.E.2d 307, 315 (Ill. 2006)); *Abouzaid v. Mansgard Gardens Assoc., LLC*, 23 A.3d 338, 346 (N.J. 2011) ("'Potentially coverable' claims require a defense."). If there are competing reasonable interpretations of the policy, "the court must construe the policy in favor of the insured." *Employers Ins. Of Wausau v. Ehlco Liquidating Trust*, 708 N.E.2d 1122, 1130 (Ill. 1999) (Illinois law); *Voorhees v. Preferred Mut. Ins. Co.*, 607 A.2d 1255, 1261 (N.J. 1992) (New Jersey law).

The complaint alleged that Footstar caused Patrick's injuries by "negligently and carelessly … failing to properly re-

move" the infant stroller from the shelf. Based on these allegations and the expansive way "arising out of" has been interpreted by Illinois and New Jersey courts, the claim could have been "potentially coverable" under subpart 1. *See Abouzaid*, 23 A.3d at 346. There is certainly an argument that Patrick's injury arose from Sehat's "work or operation[]", especially if the injury does not have to be "pursuant to" the Master Agreement, as required by subpart 2. *See Cnty. of Hudson v. Selective Ins. Co.*, 752 A.2d 849, 853 (N.J. Super. Ct. App. Div. 2000) (holding that the fact that employee's job required him to be at a location where he was injured meant the injury arose from his work). As to Footstar, it was possible that Sehat's actions were "potentially covered," *Momence*, 566 F.3d at 694, and arose out of his performance under the Master Agreement since, but for the Master Agreement, he would not have been working in the store. *See Am. Econ.*, 890 N.E.2d at 588 (defining "arising out of" as including "but for" causation). Though we have rejected these readings for indemnity purposes, two triers of fact found that the injury arose from Footstar's work, including the jury and the magistrate judge, showing the injury was potentially coverable under the terms of the Master Agreement and Policy.

We also affirm the magistrate judge's finding that Liberty Mutual and Footstar do not have to pay defense costs before January 24, 2008 when Kmart provided an official request for coverage. New Jersey law requires notice be given to the insurer to trigger the duty to defend. "[T]he insured being sued is responsible for promptly conveying to its insurance company the information that it believes will trigger coverage …. [I]f the insured does not properly forward the information to the insurance company, the insured cannot demand reimbursement from the insurer for defense costs the

insurer had no opportunity to control." *SL Indus., Inc. v. Am. Motorists Ins. Co.*, 607 A.2d 1266, 1272 (N.J. 1992). It is true that Liberty Mutual knew about the suit before January 24, 2008. At the same time, Kmart sat on its knowledge of the suit for one-and-a-half years before providing actual notice. Neither party has clean hands when it comes to this argument, but Kmart's failure to provide actual notice is dispositive. *Id.*; *see also Chem. Leaman Tank Lines, Inc. v. Aetna Caus. & Sur. Co.*, 817 F. Supp. 1136, 1158, 1161 (D.N.J. 1993) (finding insured cannot recover defense costs predating notice to insurer). Since actual notice was not given until late January 2008, Liberty Mutual did not have a duty to defend until that point. Kmart does not make any argument that Footstar was liable for costs before that date, and so any argument as to Footstar is waived. *Hernandez v. Cook Cnty. Sheriff's Office*, 634 F.3d 906, 913–14 (7th Cir. 2011) (arguments not made in opening briefs are waived).

### C. Liberty Mutual Did Not Act in Bad Faith

While Liberty Mutual had a duty to defend, the flip side is that Liberty Mutual had a defensible position and therefore did not act in bad faith in denying coverage. "[I]n order to prove a claim of bad faith under New Jersey law, a plaintiff must prove that: '(1) the insurer lacked a 'fairly debatable' reason for its failure to pay a claim, and (2) that the insurer knew or recklessly disregarded the lack of a reasonable basis for denying the claim.'" *Certain Underwriters at Lloyd's of London v. Alesi*, 843 F. Supp. 2d 517, 531 (D.N.J. 2011) (citation omitted). "What is dispositive is whether, based on the facts existing at the time of the denial, a reasonable insurer would have denied the claim, so that even if the insurer gives an erroneous reason for denying coverage, if there is a

valid basis for denying coverage, the insurer is not liable for bad faith." *On Air Entm't Corp. v. Nat'l Indemn. Co.*, 210 F.3d 146, 153 n.11 (3d Cir. 2000). Though Liberty Mutual's denial letter erroneously refused coverage based on the nature of the complaint—there was an indemnification requirement for personal injury and not just products liability—our discussion makes clear that Liberty Mutual's position was, at the very least, "fairly debatable" at the time Liberty Mutual denied coverage.

### D. Footstar and Liberty Mutual Cannot Deny Defense Costs Based on Kmart's Breach of the Notice Provisions

Kmart did not alert Liberty Mutual or Footstar to the suit until thirty months after it first learned about the claim and one-and-a-half years after the suit was filed. This was in contravention of the notice provisions in both the Master Agreement (requiring Kmart to "timely advise [Footstar] of any lawsuit, claim or proceeding") and the Policy (requiring Kmart to notify Liberty Mutual "as soon as practicable of an 'occurrence' or an offense which may result in a claim"). However, that does not mean that Kmart's actions precluded it from recovering defense costs. Under New Jersey law, "an insurer must show that it was appreciably prejudiced by its insured's failure to cooperate in order to disclaim coverage based on that failure." *Hager v. Gonsalves*, 942 A.2d 160, 163 (N.J. Super. Ct. App. Div. 2008). In order to show prejudice resulting from a late notice, the insured has to show "a 'likelihood of success' in defending liability or damages if those opportunities had been available." *Trs. of Univ. of Pa. v. Lexington Ins. Co.*, 815 F.2d 890, 898 (3d Cir. 1987). Liberty Mutual has not presented any evidence that the case would have

turned out differently had it been involved earlier. It rests its argument on the fact that it might have convinced Kmart to settle for less earlier—there were settlement discussions that Kmart turned down prior to actually settling. However, Liberty Mutual has denied coverage and responsibility from the get-go. Not only is there no evidence that Liberty Mutual would have handled the case differently had it had notice, but its practice calls into question whether it would have even joined in the settlement discussions. Absent any evidence that the case would have come out differently had the insurer been involved earlier, we find no bad faith on Liberty Mutual's part.

Under Illinois law, prejudice is a factor, but not a dispositive one like in New Jersey. *Country Mut. Ins. Co. v. Livorsi Marine, Inc.*, 856 N.E.2d 338, 346 (Ill. 2006). With that said, the Illinois Supreme Court has highlighted that an important factor is whether the insuring party (Footstar) had actual notice of the lawsuit, meaning "sufficient information to locate and defend the suit." *W. Am. Ins. Co. v. Yorkville Nat. Bank*, 939 N.E.2d 288, 296 (Ill. 2010). In that case, the Illinois Supreme Court upheld the trial court's finding that the notice provision had not been breached despite twenty-seven months passing between when the lawsuit was filed and when the insured sent official notice. *Id.* at 294. The trial court found that the insurer had actual knowledge "within a few months of the lawsuit" being filed, and that weighed in favor of finding no breach of notice. *Id.* at 296. Here, Footstar was aware of the suit and had sufficient information to locate and defend the suit less than a month after it was filed. Footstar has not shown any prejudice, as discussed above, and so we find no material breach of the notice provision. Moreover, the Master Agreement contained a non-waiver

clause, which stated that Kmart cannot waive any of its rights (which would presumably include right to defense and indemnification) through "silence, acquiescence or inaction." Such clauses are enforceable in Illinois, and Footstar has not presented any evidence that Kmart waived this clause. *See Roboserve, Inc. v. Kato Kagaku Co.*, 78 F.3d 266, 277 (7th Cir. 1996). Kmart could therefore not waive its right to defense by inaction.

### E. Kmart Waived its Prejudgment Interest Argument

Finally, Kmart asserts in its appellate briefing that it was entitled to prejudgment interest based on Liberty Mutual and Footstar's contractual obligation, and the magistrate judge abused its discretion by denying such interest. *See BKCAP, LLC v. CAPTEC Franchise Trust 2000-1*, 688 F.3d 810, 815 (7th Cir. 2012) (reviewing prejudgment interest decision for abuse of discretion). However, this argument was "underdeveloped, conclusory, or unsupported by law" in front of the magistrate judge and is therefore waived on appeal. *C&N Corp. v. Gregory Kane & Ill. River Winery, Inc.*, 756 F.3d 1024, 1026 (7th Cir. 2014). Kmart referenced prejudgment interest only three times in front of the magistrate judge: once in each of the "Wherefore" clauses of its motion and memorandum in support of summary judgment, and in one sentence in its Motion for Entry of Judgment. Kmart did not assert which contract gave rise to prejudgment interest (the Master Agreement, the Policy, or both); which state law and prejudgment interest statute governed (Illinois or New Jersey); and did not cite a single case supporting its position that it is entitled to prejudgment interest. This argument is waived.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM IN PART and REVERSE IN PART the judgment of the magistrate judge and remand for proceedings consistent with this opinion.